Case number 23-1239 Trenton Palmer Petitioner versus Federal Aviation Administration Administrator and National Transportation Safety Board. Mr. Schulte for the petitioner, Ms. Clark for the respondents. Good morning. Good morning, Your Honor. Member of the bench, good morning. My name is Robert Schulte. I am counsel for the petitioner in this case, Trenton J. Palmer. I appreciate the entertaining any questions the court may have. With that said, we're here today seeking a reversal of the decision of the NTSB board in this matter and a vacation of the order of suspension had against the petitioner. We do this for a couple of reasons, not the least of which is that during the course of this matter, the petitioner received process, but he did not receive due process. And what I mean by that is that during the course of this proceeding, the NTSB and the Administrative Law Judge seems to acknowledge that the Federal Rules of Evidence and the Federal Rules of Civil Procedure now apply in air safety proceedings. They acknowledge it, but they don't do it. They seem to give lip service to it, but in fact are not faithfully applying the Rules of Civil Procedure or the Federal Rules of Evidence. And indeed, as late as 2021, the NTSB referred to the congressional mandate set forth in the Pilots' Bill of Rights that they follow these non-binding guidance. Pilots' Bill of Rights is quite clear. The NTSB and the FAA in air safety proceedings must follow, shall follow, the rules set forth in the Federal Rules, the FRE and the FRCP. It is true that it is conditioned as were practicable, but the NTSB has never identified any case where it stated in writing that the following of these rules was quote-unquote impracticable. And that in Federal Rules of Civil Procedure 8A, the pleading standards set forth in that rule is articulated in the Iqbal and Tromley cases, which I expect this court is well familiar with. In this case, at issue was 14 CFR 91-119. It's a fairly straightforward and simple regulation that states that no pilot may operate an aircraft within 500 feet of persons or structures on the ground except as necessary for takeoff and landing. What does that mean? Unfortunately, there's no standards to determine what is necessary for takeoff and landing, and several courts have criticized the lack of standards on that point. But, in this case, Mr. Palmer was conducting something called an off-airport landing. It is a landing, as its name suggests, not on an airport as you and I would typically understand it. No Federal Aviation Regulation precludes off-airport landings. And so when the off-airport landing is done, it is typically done pursuant to FAA guidance published in its own document called the Off-Airport Operations Guide. That's what the petitioner was doing on the day in question. There is no meaningful dispute on that point. The FAA's expert, a gentleman named Roy Speig, did state in no uncertain terms that in order to conduct an off-airport operation prudently and safely, you should do it in accordance with the FAA's own guidance. Indeed, he conceded that, in fact, it was necessary to conduct an inspection pass during the course of an off-airport landing. With that concession, as far as the petitioner is concerned, the case flew over. Because once the concession is made that the operation is necessary for landing, not when landing, we'll come back to that, that indeed the distance and altitude restrictions fall away. That's where that case should have stopped. But it didn't stop there. This case took five days of testimony involving all manner of facts that were never alleged in the Administrator's complaint. The Administrator's complaint to be charitable is anemic. It simply takes the language of the statute and turns them into affirmative statements. This is exactly the caution of Vick, Ball, and Tromley. You can't do that. We are not suggesting for a moment that the Administrator needed to plead each and every factual allegation he decided to prove in his case in chief. But he has to set forth the facts and circumstances that identify why, why this operation was a violation of 119. Because every takeoff and landing operation, every missed approach, every practice approach where no landing is intended, oftentimes will take an aircraft within 500 feet of persons or structures on the ground. Under the FAA's rationale of this case, every one of those operations is a violation unless the airman stands up and defends himself. That cannot and is not the law. And indeed the NTSB in its own decisions has clearly stated that operations that do not involve landing but necessary for takeoff and landing, such as missed approaches, such as practice approaches, such as other missed opportunities to land, do in fact fall within the preparatory clause of accept as necessary when takeoff and landing. But again, the FAA's complaint is devoid of any facts that would inform that. For example, one of the other allegations under 119 is that in the event of a unit power failure, the aircraft would pose an undue hazard to persons or property on the ground. The FAA made that allegation as an affirmative statement. But it begs the question, why? What about this particular operation rendered it unduly hazardous to persons or property on the ground? There's no facts in the complaint that speak to that. Is it the proximity of the aircraft to persons and property? Well, that can't be it because their expert, Mr. Spieg, testified that that happens all the time. So what else was it about this operation that made it unduly hazardous to persons or property on the ground? There are no facts in the complaint that inform that allegation. It's just a recitation of the elements of the cause of action, again, without any underlying factual allegata. And that is what's prohibited by Iqbal and Tromley and what is required by Rule 8A. Likewise, my client never disputed, never disputed that he came within 500 feet of persons or property on the ground. And yet we spent days, days talking about that. It wasn't necessary. This is a simple regulatory violation. And likewise, the distance measurements in the complaint where they say he operated within 150 feet of this structure, 200 feet of that person or property, that's all fine and well. But, again, specialists conceded that that was necessary to conduct an off-airport landing. So that couldn't be the violation. So where the FAA went next was to suggest, again, unplead in the complaint that somehow the landing site was inappropriate. And we talked about that for a while during the course of the proceeding. And then when the FAA took the position that because the petitioner was not landing at that precise moment and that he did not intend to land because, again, it's an inspection pass, it's not an inspection landing, she said, well, that's no longer an issue in the case. And I agreed. And this gets into the next issue of what the administrative law judge did in this case. And with all respect, when the FAA abandoned the issue and I agreed and ceased my question on that point, he took up the issue. And it's the administrative law judge that reintroduced an issue to the case that both parties agreed was no longer relevant. I would submit to your honors that was inappropriate and, frankly, highly prejudicial to my client. In fact, it informed no small part of his decision. As far as the inspector goes, Mr. Speed, he spent the bulk of that hearing giving legal opinions over the objection of the petitioner. That was inappropriate. It never should have been heard and certainly inconsistent with the federal rules of evidence. Mr. Speed, with all respect to him, was hopelessly incompetent to testify about this particular case because he knew nothing of the petitioner and he knew nothing of the aircraft. And yet, during the course of his testimony, he said, yes, the appropriateness of the landing site is a function of those things. And although he intimated that the landing site was inappropriate, he had no factual basis to make or offer that opinion at this particular proceeding. And I'd also like to point out one other thing, too. On the issue of expert bias, while I accept that it is the administrative law judge's discretion to hear testimony, there are some points where an expert goes too far. And we cited the case law in our brief. But when an expert interest is so closely aligned with the person for whom he's testifying, it's inappropriate to hear that testimony. I am not suggesting for a moment the FAA cannot offer subject matter experts in a hearing such as this. Certainly they can if the expert meets the Daubert standards and the standards set forth in the Federal Rule of Evidence 403 for the testimony of experts. But when an expert like Mr. Speed boldly celebrates the fact that he gets time off cash awards and accolades for doing a good job for the FAA, including testifying in air safety proceedings, I think that's a bridge too far. His bias in this case was institutional, and he was proud of it. And I'm not trying to make a pejorative statement against the expert. I'm merely suggesting that in this particular case, he essentially conceded that he was there to testify against the airman. He was not there to bring a body of experience to bear upon an objective set of facts. He was there to punish, and I think that was pretty clear from his testimony. He was merely putting the imprimatur of expert upon something the FAA had already decided. With that said, my time is up. I will yield at this point unless Your Honors have any questions. Thank you. Thank you, Your Honor. Ms. Puck? Good morning. Good morning. May it please the Court, Joy Park for the Administrator and the Federal Aviation Administration. My friend, Mr. Schulte, highlighted almost every single argument in Petitioner's brief. I'm not going to take the time to respond to every single one of those arguments, but I will respond to two of them. First, regarding the necessity here, in this case, it's important to note that from the outset, Mr. Palmer admitted that his low flight was below 100 feet above ground level and within 500 feet of structures. Thus, unless his flight was necessary for takeoff or landing, he violated the FAA's regulations. In this case, the Administrative Law Judge found several different reasons why Mr. Palmer's low flight was not necessary for landing, one being that there was no emergency, two, because Mr. Palmer had safer and more reasonable options for conducting this low flight, three, because Mr. Palmer had the option to refrain from conducting this low flight, and fourth, because the runway was not suitable. In this appeal, Mr. Palmer only challenges that last finding regarding the suitability of the landing site. As I just pointed out, there are many reasons that the Administrative Law Judge gave for why Mr. Palmer's low flight was not necessary, and Mr. Palmer did not challenge those except for the suitability of the landing site. Second, turning to the federal rules. Amici, in this argument, inappropriately asked this court to issue a judicially reviewable finding requiring the NTSB to apply the federal rules. First of all, this argument was not presented by any of the parties, and as this court has held a Narragansett Indian tribe versus National Indian Gaming Commission, the court generally does not consider arguments not presented by the parties. Moreover, this was an argument that was never presented to the NTSB, and now Amici are trying to bring a broad attack on the NTSB's adjudication practices without even giving the NTSB the ability to respond. With regard to the Pilot's Bill of Rights, Amici admitted in their brief at page 5 that the actual language of the statute says that the NTSB should use the federal rules, quote, to the extent practicable. And finally, in this case, the NTSB appropriately applied the federal rules, and so there is really nothing for this court to do with regard to Amici's argument regarding the federal rules. Unless the court has any questions, I would like to conclude by briefly just highlighting what this case is all about. In November 2019 in Reno, Nevada, Mr. Palmer operated a low flight at an altitude below 100 feet above ground level and within 500 feet of a mother and her child, a home, a stable, a shed, and a 500-gallon propane tank. This low flight was not necessary, and therefore it violated the FAA's regulations. Thus, the FAA respectfully requests this court to affirm the NTSB's decision and deny the petition for review. I do have a question, Ms. Park, about the statute, and do you have 44709 in front of you? Yes, Your Honor. If you look at V2, it says the board may modify a suspension or revocation of a certificate to imposition of a civil penalty. Now, there's one way to read that, that it's changed from the suggested 60 days to 120 days. It's not allowed under this that they could have only imposed a civil penalty instead of a suspension. How do you read that language in V2? In other words, the board is limited to modifying a suspension here, the 120 days, to a civil penalty. Your Honor, respectfully, I don't believe that D2 applies in this scenario. That's what I'm interested in knowing, because it speaks to when the appeal goes from the administrator to the board, and it leaves out the ALJ. And the board, in its closing remarks, or its actual rulings, says the respondent's appeal is denied, the administrator's appeal is granted, and the law judge's reduction is reversed. So I think I agree with you that that language does not apply to this case because of the ALJ's participation. Right. I don't think the ALJ's participation really impacts what occurred here. But, I mean, what the ALJ did was he did – there was a little bit of confusion in the record about why the administrative law judge reduced the penalty to 60 days. He categorized this as a careless violation. But that specific finding, actually, Mr. Palmer doesn't challenge in the appeal. The only thing that he challenged was any deference that the NTSB may have given with regard to the penalty in light of this court's decision in FAM versus NTSB. Let me ask you this then. If we hadn't had the ALJ, if it had gone directly from the administrator to the board, and the administrator had given 60 or 120, under D, do you think the board could have changed that sanction to anything other than a civil penalty? Again, I think in the context of this case and the facts, the FAA would not issue a civil penalty. I'm sorry, I'm not sure if I'm understanding your question properly. Well, it's a hypothetical. I'm saying if we had no ALJ, if it went directly from the administrator to the board, it seems to me that if we had that, the board is locked in if it's going to modify a suspension to a civil penalty. I don't think that that's the way that B-2 functions. I think the B-2 applies when we have a case in which there is a civil penalty, which there is like a dollar amount. But that's not the case here. Here, the penalty was a suspension of 120 days of Mr. Palmer's private pilot certificate. And again, under FAM, the NTSB appropriately found that the FAA's suspension of 120 days was justified in law and in fact. Thank you. Any more questions? Thank you. Great. Thank you. Does Mr. Trump have any time left? All right. Does anyone have any questions? Judge Wilkins? I have no questions. All right, Judge Edgement Hall. All right, then. Your Honor, thank you. I'll be brief. No, that's it. Thank you. You have your case. As I said, I'll be brief. Thank you, Judge.
judges: Henderson, Wilkins, Edwards